McConnell *v.* State.

4876                                                302 S. W. 2d 805

Opinion delivered June 10, 1957.

[Rehearing denied July 1, 1957]

*Q. Byrum Hurst,* for appellant.

*Bruce Bennett, Atty. Gen'l.; Thorp Thomas, Asst. Atty. Gen'l.,* for appellee.

George Rose Smith, Associate Justice. This purports to be an appeal from a judgment imposing a fine and suspended jail sentence for the possession of untaxed liquor. Ark. Stats. 1947, § 48-934. Whether an appeal was perfected is open to question, for the record does not clearly show that the circuit court granted an appeal, as the law requires. Ark. Stats., § 43-2708. Instead, counsel filed a notice of appeal and designation of the record, apparently in the belief that the procedure is governed by Act 555 of 1953. That statute, as its title indicates, ap-

plies only to civil cases. Nevertheless, the record sufficiently presents the principal point in the case; so the procedural irregularity is unimportant.

It is contended that the trial court's judgment, even if originally valid, was rendered void by Act 293 of 1957 and should be set aside by this court. In view of this contention we may properly treat the purported appeal as a proceeding by certiorari to quash a void judgment and in this way reach the merits of the issue.

The case was tried below on February 11, 1957, which was during the sixtieth regular session of the legislature. On the day of trial the accused filed a motion for continuance, on the ground that his regularly employed attorney, Senator Q. B. Hurst, was a member of the General Assembly. The order denying this motion indicates that Senator Hurst was not employed in this particular case until the day before trial, that the accused had previously engaged another lawyer to defend him, and that the lawyer first employed had discussed the case with the deputy prosecuting attorney on the morning of February 11, before the opening of court.

Under the statute then in force the court's denial of the motion was not error. That statute provides that when any attorney in a pending case is a member of the General Assembly, or a clerk, sergeant-at-arms, or doorkeeper thereof, the proceedings shall be stayed for not less than fifteen days before the convening of the General Assembly and for thirty days after its adjournment. Ark. Stats., § 27-1401. Although this statute is regarded as mandatory in cases to which it properly applies, it does not require that a continuance be granted when the litigant is represented by other counsel or when the member of the legislature is not the litigant's regular attorney and is employed after the legislative session has begun. *Cox* v. *State*, 183 Ark. 1077, 40 S. W. 2d 427; *Lynch* v. *State*, 188 Ark. 831, 67 S. W. 2d 1011. Hence, under the law as it then existed, the court did not exceed its jurisdiction in refusing a continuance.

Thereafter the legislature passed Act 293 of 1957, which (by reason of an emergency clause) became effective March 27, 1957. Section 1 of the act is a verbatim re-enactment of the existing law, Ark. Stats., § 27-1401. Sections 2 and 3 of Act 293 read as follows:

"Section 2. (b) Proceedings shall be stayed in such pending suits without regard to when, where, how or why any member of the General Assembly or the aforesaid employees became employed or associated in the suit; and, without regard to the number of other attorneys that may also represent party litigant.

"Section 3. (c) Any judgment, decree, sentence or fine that may have been or may hereafter be rendered in any judicial proceedings in this State after Motion for Continuance shall have been filed by a member of the General Assembly, its clerks or Sergeant-at-Arms, within the time aforesaid, and after said motion shall have been overruled or disregarded, is hereby declared to be void, and no officer of this State shall attempt to enforce such void order."

By its explicit language Act 293 undertakes to compel every court, within the specified period surrounding each legislative session, to grant a continuance whenever it is requested by a member or employee of the General Assembly. By the terms of the act the courts have no discretion in the matter; the sole power of decision rests with the member or employee of the legislature. The question is whether the General Assembly can, consistently with the separation of governmental powers, take from the courts the power to decide what is essentially a judicial question.

It must, of course, be conceded that the legislative branch of the government does not have unlimited authority over the judiciary, for the constitutional separation of powers would then be a mere fiction. The legislature cannot, for example, require this court to deliver a written opinion in every case. *Vaughn* v. *Harp*, 49 Ark. 160, 4 S. W. 751. Again, in a case that goes far toward controlling this one, it was held that the General Assemb-

ly cannot assume the exclusive power of determining whether a continuance should be granted in a judicial proceeding. *Burt* v. *Williams,* 24 Ark. 91. There a statute requiring that all cases be continued until the ratification of peace between the United States and the Confederate States was held to be an unconstitutional attempt by the legislature to exercise judicial power. From the opinion: "Granting a continuance is either an exercise of judicial discretion upon particular facts, or an application of legal rules to them, the facts being ascertained by the court, and the discretion used, or application of law made by the court; and in either case is exclusively a judicial act. A legislative act is an annunciation by the legislative authority that certain results shall follow particular actions or conditions; but the ascertainment of the act or condition and the application of the consequences belong to the courts."

We recognize without hesitation that attorneys serving in the legislature are often entitled to have their cases continued for that reason and that a statute affording them reasonable protection in that respect is constitutional. Service in the legislature is usually undertaken at a personal sacrifice and involves public duties of the greatest importance. Obviously a lawyer cannot devote his entire time to legislative matters unless some provision is made for excusing him from appearances in court. If the public is to have the benefit of legal training and legal knowledge among its senators and representatives it is evident that lawyers in the General Assembly must be allowed to suspend their practice while that body is in session.

Sections 2 and 3 of Act 293, however, cannot be justified by the considerations that we have mentioned. These sections clearly go beyond the needs of the situation and in fact transfer the control of judicial dockets from the courts to any attorney who is a member, clerk, sergeant-at-arms, or doorkeeper of the General Assembly. A case may be supposed in which litigation of great consequence had been set for trial, with the court postponing other matters to leave several days open for the hearing. Jurors

and witnesses might have been summoned at substantial expense to the public and to the parties. The case might present questions of public interest that should be settled as quickly as possible. Despite these considerations, under Act 293 the proceedings could be halted at any stage upon the arbitrary demand of any attorney having the required connection with the General Assembly. And this would be true even though that attorney had been employed only for delay, had no knowledge of the case, and was not expected to take part in the trial.

Statutes providing for continuances to accommodate lawyers serving in the legislature have been upheld in other states, but we know of no decision sustaining legislation as extreme as Sections 2 and 3 of Act 293. To the contrary, when it has been suggested that such an act should be construed to deprive the courts of any discretion in the matter, the opinions have pointed out that such an interpretation would render the act unconstitutional. The question was considered in detail in *Johnson* v. *Theodoron,* 324 Ill. 543, 155 N. E. 481, where the statute provided for a continuance upon a showing by affidavit that the presence of an attorney member of the legislature was necessary to a fair trial. In rejecting a contention that the court was required to grant a continuance whenever the statutory affidavit was filed the court said:

"Whether the attendance in court of a particular attorney for a party to a pending suit is necessary to a fair and proper trial of such suit is a judicial question, to be determined by the court in which an application for continuance is made . . . Where a statute requires that a certain conclusion shall be made to appear as a ground of proceeding by a court, the facts from which that conclusion follows must be proved to the court by documentary evidence or testimony under oath. The court must be placed in a position where it can exercise its own judgment and not be compelled to accept the opinion of the affiant . . . In construing this statute a contrary holding was made in *Wicker* v. *Boynton,* 83 Ill. 545, where it was held that the statute does not require that the affiant shall state the facts showing the necessity of the attor-

ney's presence for a fair and proper trial of the suit. This construction of the statute would render it unconstitutional. The Legislature does not have the power to declare what shall be conclusive evidence of a fact . . . nor can it say that a court is bound to act in accordance with the opinion of a party to a suit, or of his attorney, expressed in the form of an affidavit. It is not within the power of the Legislature to exclude from the courts that which proves the truth of the case nor to compel them to receive that which is false in character. It cannot direct what orders shall be entered by the court in pending actions. It may enact statutes which affect pending actions, but the application of the statute to a particular case is a judicial function, and the determination of what order shall be entered in such a case is the exercise of judicial power which does not belong to the Legislature."

A statute similar to the Illinois act was considered in *Kyger* v. *Koerper,* 355 Mo. 772, 207 S. W. 2d 46, where Judge Hyde, speaking for a majority of the court, pointed out that the act should be construed to permit the court to reach its own conclusion: "I think that any other construction would make this statute unconstitutional. We have held that an act which arbitrarily imposes an unreasonable or unnecessary delay upon the administration of justice would be contrary to Section 10, Article II, Const. of 1875 . . . Also as stated, 16 C. J. S., Constitutional Law, § 128, p. 329, the Legislature cannot entirely exclude the exercise of the discretion of the Court. To do so is an encroachment of one department of Government upon the functions of another, prohibited by Article III, Const. of 1875 . . . If the Court is not permitted to determine this issue, which it could only do from a consideration of some facts about the case and the situation of the parties and attorneys, then its decision is arbitrarily compelled merely by the conclusion stated by the party making the affidavit regardless of what justice to others may require. Such a construction takes away all the judicial function of the court in making continuances applied for under this section."

Since Sections 2 and 3 of Act 293 attempt to deprive the courts of the power to determine a judicial question, *i.e.*, whether a continuance should be granted in a given case, we conclude that these sections are unconstitutional for the reasons given in the decisions cited. It follows that the judgment of the trial court is not void.

It is also contended that the evidence introduced by the State is insufficient to support a finding of guilt. Even if we assume that the case is properly before us by appeal, the appellant's failure to file a motion for a new trial precludes us from reviewing the sufficiency of the evidence. *Holliman* v. *State,* 213 Ark. 876, 213 S. W. 2d 617.

Affirmed.